IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CHRISTINA HOWINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:07-CV-055 |
| | ) | |
| QUALITY RESTAURANT CONCEPTS, | ) | |
| LLC, and TYLER KIRK, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the court for consideration of defendants' motion for summary judgment [doc. 15]. Plaintiff has submitted a response [doc. 17], to which defendants have submitted a reply [doc. 18]. For the reasons provided herein, defendants' motion will be granted and this civil action will be dismissed.

I.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Edwards v. Aguillard*, 482 U.S. 578, 594 (1987) (quoting Fed. R. Civ. P. 56(c)). The movant may

discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law. *Id.* at 251-52.

A party responding to a summary judgment motion "*must* set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added). "It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).

II.

*Background*

Plaintiff claims sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Tennessee Human Rights Act, TENN. CODE ANN. § 4-21-101 *et seq.* ("THRA").[1] Plaintiff worked for six or seven weeks in early 2006 as a part-time, dayshift bartender at an Applebee's restaurant owned by defendant Quality Restaurant Concepts, LLC ("QRC"). She alleges that a supervisor, defendant Tyler Kirk, sexually harassed her and then subjected her to a hostile work environment because she refused his advances. Plaintiff further contends that she was also fired by Kirk soon after she complained about the purported harassment.

On March 6, 2006, Kirk sent plaintiff and a coworker home following an argument regarding the use of her cell phone. On March 9, 2006, plaintiff submitted a letter to the restaurant's general manager complaining of sexual harassment by Kirk. On March 11, 2006, Kirk told plaintiff to "leave and not come back" purportedly due to her refusal to move her car from a customer parking space.

---

[1] THRA claims are analyzed under the same evidentiary framework as that used in evaluating Title VII claims. *See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999).

III.

*Analysis*

Title VII makes it illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). Additionally, Title VII further provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a). Title VII also has been construed as prohibiting sexual harassment so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)(citation omitted).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination" under Title VII. *See McDonnell Douglas*, 411 U.S. at 800-03. Under the *McDonnell Douglas* framework, a Title VII plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978).

The plaintiff bears the burden of persuasion throughout the entire process. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). If the plaintiff is able to establish her *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. at 792-93. If the employer successfully provides such a reason, *McDonnell Douglas's* regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 805.

## A. Hostile Work Environment Claim

A plaintiff may show a violation of Title VII via a hostile work environment claim without having to prove that she suffered an "adverse employment action." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). The elements of a *prima facie* hostile work environment claim are: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on the employee's gender; (4) the harassment created a hostile work environment; and (5) *respondeat superior* liability. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

To be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City*

5

*of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). The court must look at the working environment in its totality, considering the frequency and severity of the alleged conduct, whether the conduct was physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. *See Harris*, 510 U.S. at 23. Offhand comments do not establish a hostile working environment under Title VII. *See Morris*, 201 F.3d at 790; *Faragher*, 524 U.S. at 787. Mere insensitivity should not be confused with discrimination. *Faragher*, 524 U.S. at 787.

The present defendants argue, and the court concludes, that the incidents of harassment alleged by plaintiff are not severe or pervasive enough to establish the hostile work environment prong of her *prima facie* claim. In full, plaintiff alleges the following:

> 1. Shortly after her employment began, Kirk "would ask me to come over to his house after work . . . . I would never go. He would ask me and then he would start telling me stuff that like, basically asking me to have sex with him." At her deposition, plaintiff was asked how many times Kirk made advances toward her. She could not remember but stated that it was "more than once." She then said that the advances happened "[p]retty much[] every day that I worked with him," but she was able to provide absolutely no meaningful recollection as to how often she and Kirk actually worked together.
>
> 2. Shortly after her employment began, plaintiff, Kirk, and at least one other employee went to "hang out" at another restaurant. Kirk was playing a carnival machine game. Plaintiff asked him to win her a stuffed animal. Kirk allegedly replied that he would win it for her if she "let him eat the kitty." When asked at her deposition whether Kirk ever made any other sexually suggestive statements to her, plaintiff answered, "I really can't remember."

6

3. Kirk sent her "all of these harassing text messages . . . basically just saying that, you know, he had a lot of pull and basically if I didn't – the general gist of it is, is that if I didn't have sex with him I wasn't going to be employed there anymore."[2]

4. Kirk would "scream at" her in front of customers and he slammed a door "in my face . . . maybe twice." However, at her deposition she volunteered that she did not "really recall exactly what happened. . . . I don't know why he did it. . . . I don't even know why he would be yelling at me; he was just so mad at me all the time. . . . I don't remember [whether the yelling involved work-related issues]."

5. The March 6 and March 11 incidents in which Kirk sent plaintiff home.

6. When asked at her deposition whether Kirk ever touched her, plaintiff could only recall that "I'm sure he shook my hand at least once."

In sum, plaintiff identifies only a single incident of sexually offensive speech. She acknowledges that there was no offensive physical contact. She admittedly does not know whether the screaming or door-slamming incidents were related to her gender. She is unable to recall with any meaningful specificity the frequency of Kirk's purported advances.

The court therefore concludes that plaintiff has not established an essential element of her *prima facie* case - that the harassment created a hostile work environment -

---

[2] Plaintiff has not produced the alleged text messages and, although she testified that she showed the text messages to "everybody" and a "ton of people" including family, friends, and coworkers (both at Applebee's and at her second job), she has not produced an affidavit from any of those persons. The court also notes that plaintiff's cell phone records show that she received, at most, only eleven text messages during the entire time she worked for Applebee's. The eleven messages originated from six different numbers in three different area codes. By uncontroverted affidavit, Kirk denies that any of the listed phone numbers ever belonged to him. Lastly, plaintiff testified that she possibly did not start working at Applebee's until February 2006, and her last day of work was March 11, 2006. Her phone records show that she received no text messages during that period. There is therefore no competent evidence that plaintiff received any text messages at all while employed at Applebee's.

7

particularly in light of the infrequency of the alleged conduct and the equivocal nature of plaintiff's recollections. Although some of the allegations against Kirk "could certainly be construed as offensive, they are simply not substantial enough to satisfy the prima facie showing. Her claims depict isolated instances rather than an ongoing situation." *Clark*, 400 F.3d at 351-52; *accord Morris*, 201 F.3d at 790. "Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability." *Clark*, 400 F.3d at 352 (quoting *Faragher*, 524 U.S. at 788). Summary judgment must accordingly be granted as to plaintiff's hostile work environment claim.

## B. Adverse Employment Action

Plaintiff may nonetheless be able to make out a *prima facie* case of sexual harassment or retaliation. The elements of a *prima facie* Title VII sexual harassment claim in the absence of severe or pervasive harassment are: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on the employee's gender; (4) submission to the unwelcomed advances was an express or implied condition for receiving job benefits, or refusal to submit to the sexual demands resulted in an adverse employment action; and (5) *respondeat superior* liability. *Bowman*, 220 F.3d at 461. To establish her *prima facie* case of retaliation, plaintiff must prove that: (1) she engaged in an activity protected by Title VII; (2) her exercise of protected rights was known to defendant; (3) defendant thereafter took an adverse

8

employment action against her, or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris*, 201 F.3d at 792.

On both the retaliation and the harassment claims, the present parties disagree as to whether plaintiff suffered an adverse employment action. Termination is an adverse employment action, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), but, according to defendants, plaintiff was never fired.

Defendants have submitted the affidavit of Danny Hodge, the regional manager responsible for overseeing the Applebee's restaurant at which plaintiff worked. According to Mr. Hodge, defendant Kirk was employed as a "key hourly manager" during plaintiff's time of employment. Key hourly managers, according to Mr. Hodge,

> are hourly employees that have received training on how to help supervise a shift of employees at an Applebee's store. When these individuals are not working in the capacity of a key hourly manager, they are working as waiters/waitresses, bartenders, or other hourly positions at a store. At least one Applebee's salaried manager is required to be at a store when an individual is working as a key hourly manager. Key hourly managers do not have the authority to terminate any Applebee's employee.

Defendants have also submitted the affidavit of J.B. Hill, who was a salaried Applebee's manager during plaintiff's employment. Plaintiff and Mr. Hill agree that they had a conversation at the restaurant on March 6, 2006, after the first time Kirk told plaintiff to go home. According to Mr. Hill, he "informed Ms. Howington that Kirk, as a key hourly manager, did not have the authority to terminate her employment with Applebee's." At her

deposition, plaintiff was asked about that conversation.

> Q: Did Mr. Hill tell you at that time that Mr. Kirk did not have the authority to fire you?
>
> A: He may have implied that in some sense, but he — I'm not really sure exactly what he said. I don't know if he said it word-for-word either.[3]

Plaintiff's equivocal recollection is insufficient to rebut defendants' direct evidence. *See* 10A Charles Allan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2727 (3d ed. 1998) ("[E]vidence in opposition to the motion that clearly is without any force is insufficient to raise a genuine issue. Thus, neither frivolous assertions nor mere suspicions will suffice to justify a denial of summary judgment."). The court concludes that plaintiff has not raised a genuine issue of material fact as to whether she was terminated. Defendant Kirk did not have the authority to fire her, and plaintiff had been informed of that fact.

But that is not the end of the court's inquiry. Formal termination is but one form of adverse employment action. "[I]t is impossible to list every possible employment action that falls into the definition of adverse employment action and a court must consider indices that might be unique to a particular situation." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 799 (6th Cir. 2004) (citation and quotation omitted).

---

[3] Additional testimony pertaining to her conversation with Mr. Hill is illustrative of the ambiguous and unhelpful nature of plaintiff's testimony as a whole: "And J.B. told me, because J.B. was there, not to worry about it, blah, blah, blah, blah, blah . . . . and that's why he was like, 'You know, just let him blow off some steam, yadda, yadda, yadda.'" [101, 106].

Plaintiff testified that she believed she had been terminated. By all accounts, defendant Kirk - while working in some form of supervisory capacity - told her to "leave and not come back."[4] In the court's view, plaintiff's allegations are more akin to a constructive discharge, or a hybrid termination/constructive discharge, claim.

Constructive discharge analysis focuses in part on the objective feelings of an employee. *See Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987) (asking whether "a reasonable person in the employee's shoes would have felt compelled to resign"). In the present case, plaintiff testified that after defendant Kirk told her to go home and not come back, she immediately "turned around and [] walked out" without speaking to salaried management. She returned to Applebee's only once, to give back a shirt and pick up her last paycheck. She talked to no one at that time.

According to Mr. Hill's affidavit, he was on duty at the restaurant on March 11 when plaintiff left. Plaintiff's equivocal recollection (that Hill "may have been there") does not rebut defendants' proof. Further, Mr. Hodge states that he attempted to contact plaintiff by phone on March 10, 2006, the day after her letter was delivered to management complaining about the purported harassment. According to Mr. Hodge, he left a number of voice mails for plaintiff which she did not return. He describes their only actual conversation as follows: "I did briefly speak with Ms. Howington over the phone . . . but she indicated that

---

[4] Plaintiff was "written up" after both the March 6 and March 11 incidents. The March 6 Notice of Progressive Discipline refers to Kirk as the manager on duty, and both notices contain Kirk's signature on the "supervisor" line along with a reference to termination as a consequence of further violations.

her schedule was busy and she could not talk with me then about her harassment complaints."[5] Again, plaintiff's vague testimony (that "a guy . . . like, the regional manager guy" phoned her but she does not remember whether or not she returned the call) does not rebut defendant's proof.

In light of these facts, the court concludes that a reasonable person in plaintiff's position would not have felt compelled to resign. Plaintiff had been informed that Kirk did not have the authority to fire her, and both the store manager and the regional manager were available to her on March 11. As in *Yates*, plaintiff's actions simply were not objectively reasonable. "[T]hough she was understandably upset . . . , [she] sought no outside confirmation or explanation, and refused to listen when [the personnel manager] called her." *Yates*, 819 F.2d at 637.

In sum, plaintiff has not raised a genuine issue of material fact as to whether she suffered a termination, constructive discharge, or any other form of adverse employment action. She has thus failed to make out her *prima facie* case of sexual harassment or retaliation. Defendants' summary judgment motion must accordingly be granted.

## C. Vicarious Liability

Lastly, the court returns briefly to plaintiff's hostile work environment claim. Having concluded that plaintiff suffered no adverse employment action, the court further concludes that she has failed to meet a second prong of her *prima facie* hostile work

---

[5] Mr. Hodge's affidavit states that the conversation took place on March 10, *200*7, which the court presumes is a typographical error.

environment claim against QRC - the existence of *respondeat superior* liability. In cases where the alleged harassment did not culminate in an adverse employment action, an employer may raise an affirmative defense to liability where it exercised reasonable care to prevent and promptly correct any sexually harassing behavior and where the plaintiff unreasonably failed to take advantage of the corrective or preemptive opportunities offered by the employer. *See Faragher*, 524 U.S. at 807.

Plaintiff worked at Applebee's from late January or early February until March 11. The QRC Crewmember Handbook appended to Mr. Hodge's affidavit shows that QRC has an anti-harassment policy in place. Plaintiff admittedly did not orally complain to management regarding the purported harassment until March 6 or 7. Her complaint letter to management was not delivered until March 9. Mr. Hodge promptly attempted to contact plaintiff the following day, but she refused to speak with him.

The court concludes that QRC exercised reasonable care to prevent and promptly correct any sexually harassing behavior and that plaintiff unreasonably failed to take advantage of the available corrective opportunities. She therefore cannot show vicarious liability on the part of QRC and, for that additional reason, fails to make out her *prima facie* hostile work environment claim against that defendant.

An order reflecting this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge